# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SENIOR JUDGE BENJAMIN LERNER, :     1:12-cv-2577
*et al.*, :
      :     Hon. John E. Jones III
        Plaintiffs, :
      :
      v. :
      :
THOMAS W. CORBETT, JR., :
GOVERNOR OF THE :
COMMONWEALTH OF :
PENNSYLVANIA, *et al.*, :
      :
        Defendants. :

## MEMORANDUM

## September 24, 2013

Presently pending before this Court is a Motion to Dismiss (Doc. 14) under civil procedural rule 12(b)(6), filed by Defendants Thomas W. Corbett, Governor of the Commonwealth of Pennsylvania, and Carol T. Aichele, Secretary of the Commonwealth.  By this Motion, Defendants seek to dismiss each count of the Amended Complaint (Doc. 10) filed by Plaintiffs, Senior Judge Benjamin Lerner and Judges John W. Herron, Leonard N. Zito, and Gerald Solomon.  For the reasons that follow, this Court will grant the Motion in full and dismiss Plaintiffs' Amended Complaint with prejudice.

# I.  BACKGROUND

This matter concerns whether a Pennsylvania constitutional provision, requiring that all justices, judges, and justices of the peace be retired in the year that they turn 70,[1] violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution.  Plaintiffs are Pennsylvania state court judges who will be required to retire before the completion of their respective elected terms due to the passage of their 70th birthdays.

Under Article V, Section 16 of the Pennsylvania Constitution, "[j]ustices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years."  PA. CONST. art. V, § 16(b).  This provision was the product of a constitutional convention assembled in 1967-68, purposed to consider certain revisions to the state charter.  An iteration of the proviso, mandating that judges retire "upon attaining the age of seventy years," PA. CONST. art. V, § 16(b) (1968), was adopted by the convention and ratified by voters in 1968; the mandate was amended to its present form in 2001, defining that judges must retire on December 31st of the year of their 70th birthday, *see* PA.

---

[1] For ease of reference, this Memorandum will refer to the designated group as "judges" or "jurists."

CONST. art. V, § 16(b) (2001).  Of additional note, jurists in Pennsylvania are elected to fixed terms:  justices and judges serve ten-year terms, while municipal court judges and justices of the peace serve six.  *See* PA. CONST. art. V, § 15(a).  Upon retiring, former jurists may be assigned to serve as senior judges, *see id.* § 16(c),  receiving compensation on a per diem basis, *see* 204 Pa. Code. § 211.2(h).

This action originated in the Commonwealth Court of Pennsylvania, where Plaintiffs lodged complaints raising issues under the federal and state constitutions.  Defendants filed a Removal Petition (Doc. 1) with this Court on December 26, 2012, based on Plaintiffs' federal claims.  On January 25, 2013, Plaintiffs filed an Amended Complaint (Doc. 10).  Defendants filed a Motion to Dismiss the Amended Complaint on February 11, 2013 (Doc. 14) and, later, a supporting brief (Doc. 25).

Meanwhile, various of the plaintiffs in the state court action filed an Application for Extraordinary Relief in the Supreme Court of Pennsylvania, which that tribunal granted.  *See Driscoll v. Corbett*, 64 A.3d 629 (Pa. 2013) (*per curiam*).  Soon thereafter, on April 3, 2013, this Court, with the parties' agreement, issued an order (Doc. 27) staying the present matter for 90 days, in anticipation of accelerated developments in the state court proceeding.  Indeed, within the 90-day period, the Pennsylvania Supreme Court published an opinion

resolving the state constitutional issues in Defendants' favor, *see Driscoll v. Corbett*, 69 A.3d 197 (Pa. 2013), and, on July 2, 2013, this Court filed an order (Doc. 29) lifting the stay and requiring the parties to recommence briefing of Defendants' Motion to Dismiss. At present, the motion has been fully briefed and is ripe for disposition.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) contends that the complaint has failed to assert a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). In considering such motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). To resolve a motion to dismiss based on Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citations and internal quotation

marks omitted).  Rule 12(b)(6) permits a court to grant a motion to dismiss if there

is a dispositive issue of law.  *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## III.    DISCUSSION

As noted, Plaintiffs' Amended Complaint alleged violations under the Equal

Protection and Due Process Clauses of the Fourteenth Amendment.  Defendants

argue that the claims are foreclosed by controlling precedent.  We address each

issue in turn.

### A.    EQUAL PROTECTION

As a foundational premise, Defendants maintain that rational basis review

applies to the present equal protection inquiry, explaining that age is not a suspect

classification.  *See Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991).  Additionally,

they assert that, in general, there is no fundamental right to governmental

employment, *see Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976) (*per

curiam*) (in the equal protection context, indicating that a standard less than strict

scrutiny may be applied to state legislation restricting eligibility for public

employment opportunities), nor to judicial appointments specifically, *see Malmed

v. Thornburgh*, 621 F.2d 565, 570 (3d Cir. 1980) (citing *Murgia*, 427 U.S. at 313),

*cert. denied*, 449 U.S. 955 (1980).  Accordingly, as the mandatory retirement

provision neither encroaches upon a fundamental right nor targets a suspect class,

Defendants maintain that it merely must evidence a rational relationship to a legitimate aim. *See Romer v. Evans*, 517 U.S. 620, 631 (1996); *see also United States v. Pollard*, 326 F.3d 397, 410 (3d Cir. 2003) (stating that, in terms of rational basis review, "where there are plausible reasons for [delineating the classification], our inquiry is at an end" (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (internal quotation marks and alteration omitted)).

In opposition, Plaintiffs advance that intermediate scrutiny should apply, based on the age classification defined by Section 16(b) and the provision's impact on the right to work. As to the classification, Plaintiffs assert that the group comprised of judges over 70 years-old qualifies as quasi-suspect. They state that such heightened scrutiny is appropriate where the class (1) has been historically subjected to discrimination; (2) exhibits a defining characteristic that "frequently bears [a] relation to ability to perform or contribute to society"; (3) presents "obvious, immutable, or distinguishing" attributes, defining it as a distinct group; and (4) is "a minority or politically powerless." *Windsor v. United States*, 699 F.3d 169, 181 (2d Cir. 2012) (citations and internal quotation marks omitted; alteration in original), *aff'd on other grounds*, 133 S.Ct. 2675 (2013). As to the first factor, Plaintiffs contend that senior citizens are subject to stereotyping in the employment context, citing Congress's findings that older workers suffer

"arbitrary [age] discrimination." 29 U.S.C. § 621(a)(4). Plaintiffs note that the

Age Discrimination in Employment Act was expressly purposed to, *inter alia*,

prohibit such unfair treatment and promote the employment of older individuals

according to ability, not age. *See id.* § 621(b). With regard to the second

consideration, Plaintiffs concede that physical performance may decline with age,

but distinguish judicial duties as intellectual, maintaining that "age and experience

improve judges' abilities." Pls.' Opp'n Br. (Doc. 32) at 12. As to the final factors,

Plaintiffs state that age is immutable and explain that, although older citizens are

not commonly viewed as politically powerless, the Supreme Court has indicated

that the final factor is "far less important than the others." *Id.* at 13; *see City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 472 n.24 (1985) (Marshall, J.,

dissenting) ("The 'political powerlessness' of a group may be relevant, . . . but that

factor is neither necessary, as the gender cases demonstrate, nor sufficient, as the

example of minors illustrates." (internal citation omitted)).

Turning to Section 16(b)'s effect on the right to work, Plaintiffs broadly

reason that deprivation of such right denies a person the protection afforded to

those who are permitted to labor and affects an individual's right to life, liberty,

and property. *See Smith v. Texas*, 233 U.S. 630, 636 (1914) ("In so far as a man is

deprived of the right to labor, his liberty is restricted, his capacity to earn wages

and acquire property is lessened, and he is denied the protection which the law affords those who are permitted to work.").

Consistent with the Supreme Court's repeated pronouncements, we agree with Defendants that classifications based on age are examined under the rational basis standard, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000); *Gregory*, 501 U.S. at 470; *Vance v. Bradley*, 440 U.S. 93, 96-97 (1979); *Murgia*, 427 U.S. at 313-14, and also that legislation restricting available employment opportunities does not burden a fundamental right, *see Murgia*, 427 U.S. at 313. Hence, review of Article V, Section 16(b) for its rational relation to a legitimate governmental purpose is appropriate.

Applying rational basis review, Defendants centrally assert that the Supreme Court's decision in *Gregory* and that of the Third Circuit in *Malmed* control, foreclosing Plaintiffs' claim. Significantly, in *Malmed*, the Third Circuit upheld the Pennsylvania constitutional provision presently challenged as consistent with the Equal Protection Clause. *See Malmed*, 621 F.2d at 569. There, the Court cited reference materials prepared for the delegates to the Pennsylvania Constitutional Convention of 1967-68, which indicated that the compulsory retirement provision was purposed to: (1) reduce court congestion by increasing the number of jurists (*i.e.*, electing new judges while retaining the part-time services of retired judges);

(2) eliminate the unpleasant task of individually removing aged and disabled judges; (3) prevent the harm caused by those few judges who become senile; and (4) accord with the trend of imposing retirement in other public and private employment. *See id.* at 568. The Court concluded that the stated aims were legitimate and rationally related to the mandatory retirement age. *See id.* at 569. Notably, the Third Circuit rejected the district court's characterization of the constitutional provision as solely based on the inference that judges over 70 cannot satisfactorily perform their judicial duties. *See id.* at 572. The Court emphasized that the preparatory committee did not defend the amendment on this basis and noted that the burden would have been upon the plaintiffs to prove that the Constitutional Convention had no reasonable basis for accepting the stated reasons in support of the proposal. *See id.*

Subsequent to *Malmed*, the Supreme Court in *Gregory* upheld a Missouri constitutional provision requiring judges to retire at age 70 against an equal protection challenge. *See Gregory*, 501 U.S. at 473. There, the Court emphasized that a state's citizens "have a legitimate, indeed compelling, interest in maintaining a judiciary fully capable of performing the demanding tasks that judges must perform," noting that voluntary retirement, impeachment procedures, and the election process may not be sufficient to ensure this objective. *Id.* at 472;

*see id.* at 472-73.  Significantly, the Court recognized that

> [t]he Missouri mandatory retirement provision, like all legal classifications, is founded on a generalization. It is far from true that all judges suffer significant deterioration in performance at age 70. It is probably not true that most do.  It may not be true at all. But a State "does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."

*Id.* at 473 (quoting *Murgia*, 427 U.S. at 316) (citation and internal quotation marks omitted).  In addition, the High Court highlighted that the constitutional provision in issue "reflect[ed] both the considered judgment of the state legislature that proposed it and that of the citizens . . . who voted for it," stating that the people's action should not be overturned unless irrational.  *Id.* at 471.

As to Plaintiffs' claim that societal and demographic changes since the initial adoption of Section 16(b) in 1968 require revisiting the mandatory retirement age, Defendants maintain that such inquiry is irrelevant and that such a policy judgement is not within the competency of the courts.  *See Bradley*, 440 U.S. at 112 (in responding to an argument disputing the age at which mandatory retirement should be set, stating that "it is the very admission that the facts are arguable that immunizes from constitutional attack the congressional judgment represented by [the] statute").

In response, Plaintiffs pertinently advance that the Supreme Court's recent application of the rational basis test in *United States v. Windsor*, ___ U.S. ___, 133 S.Ct. 2675 (2013), requires that a law's legitimate purpose be weighed against its improper purpose and effects. *See* Pls.' Opp'n Br. (Doc. 32) at 13 (citing *Windsor*, 133 S.Ct. at 2696 ("The federal statute is invalid, for no legitimate purpose overcomes the purpose and effect to disparage and to injure those whom the State, by its [relevant] laws, sought to protect in personhood and dignity."). As an additional overlay, Plaintiffs assert that the constitutionality of Section 16(b) must be evaluated in light of present conditions, citing *Shelby County v. Holder*, ___ U.S. ___, 133 S.Ct. 2612 (2013) (holding, *inter alia*, that the coverage formula of Section 4 of the Voting Rights Act, enacted in 1966, is unconstitutional in light of current conditions).

Proceeding to the merits, Plaintiffs contend that "the passage of time since [Section 16(b)] first was enacted has eroded any possible justification" for compulsory retirement, Pls.' Opp'n Br. (Doc. 32) at 14, raising three central points. First, they aver that the incidence of cognitive deterioration has decreased considerably in recent years and observe a "changed societal understanding of the effects of aging." *Id.* at 15. Second, they dispute that compulsory retirement has operated to increase judicial manpower, arguing that the senior-judge system

functions to ensure sufficient capacity.  Third, Plaintiffs maintain that Section

16(b) is unnecessary in light of existent procedures for the removal of

incapacitated jurists.  *See* PA. CONST. art. V, § 18(d).  Given this assessment,

Plaintiffs reason that none of the proffered rationales remain to overcome Section

16(b)'s purpose and effect to denigrate and harm, *e.g.,* by compensating senior

judges less for the same work as their younger counterparts and "stigmatizing

them as a group" by implying that they are incompetent.  Pls.' Opp'n Br. (Doc. 32)

at 16 (citing *Windsor*, 133 S.Ct. at 2696).

Contrary to Plaintiffs' interpretation, we do not believe that *Windsor* called

into question the Supreme Court's prior decision in *Gregory* or the Third Circuit's

in *Malmed*.  *Windsor* did not, as Plaintiffs claim, utilize a balancing test in its

equal protection inquiry.  Rather, in considering the constitutionality of Section 3

of the Defense of Marriage Act ("DOMA"), the Supreme Court determined that no

legitimate purpose supported the statute's classification based on sexual

orientation, which would vitiate the need for any further review.  *See Windsor*, 133

S.Ct. at 2696 (stating that "no legitimate purpose overcomes the purpose and

effect to disparage and to injure"); *see also id.* at 2693 ("The avowed purpose [of

DOMA is] to impose a disadvantage, a separate status, and so a stigma upon all

who enter into same-sex marriages made lawful by the unquestioned authority of

the States."). While we commend Plaintiffs for their thoughtful and creative argument, extending *Windsor* in the fashion they suggest would be improvident.

Additionally, Plaintiffs' argument based on changed conditions is unconvincing. As a general matter, it is unclear whether consideration of changed circumstances is appropriate to an equal protection inquiry. *See Murillo v. Bambrick*, 681 F.2d 898, 912 n.27 (3d Cir. 1982) (collecting cases; remarking that "the Supreme Court appears not to have determined definitively whether changed conditions are a relevant consideration in equal protection analysis" (citations omitted)). In all events, we are compelled to note that the provision Plaintiffs seek to challenge is not merely the result of legislative action, but a state constitutional provision approved by the voters of the Commonwealth. The distinction is important. Such provision "reflects both the considered judgment of the state legislature that proposed it and that of the citizens of [Pennsylvania] who voted for it." *Gregory*, 501 U.S. at 471. Bearing this in mind, consistent with *Gregory* and *Malmed*, we cannot say that requiring retirement at age 70 represents an irrational means of seeking to ensure a well-functioning state judiciary. *Accord Driscoll*, 69 A.3d at 211-12.

## B.    DUE PROCESS

Turning to the due process issue, Defendants assert that Plaintiffs have no

constitutionally protected property interest in continued judicial employment. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). They explain that Plaintiffs would have to demonstrate a "legitimate claim of entitlement" to continued employment emanating from state law, *id.* at 577, and argue that such claim is foreclosed by the express directive of Section 16(b) in compelling retirement. *See Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir. 2001) (affirming the constitutionality of a mandatory retirement provision affecting air traffic controllers; stating that "[t]here is generally not a property interest in continued public employment unless a claimant can demonstrate a 'legitimate claim of entitlement to it'" (quoting *Roth*, 408 U.S. at 577)).[2]  In other words, Defendants maintain, "the right to hold judicial office, as defined by Pennsylvania Constitutional Law, *specifically excludes* a right to continue in office past the mandatory retirement age."  Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 25) at 15 (emphasis in original).

---

[2] Defendants also note that *Malmed* discussed a due process challenge to Article V, Section 16(b) of the Pennsylvania Constitution in light of the irrebuttable presumption doctrine, which is applicable to claims based on substantive due process. *See Malmed*, 621 F.2d at 573-78.  Here, however, Plaintiffs express their relevant challenge in terms of procedural due process. *See* Pls.' Am. Compl. (Doc. 10) at ¶¶ 74-76.

Plaintiffs do not offer any relevant argument in their brief in opposition, therein essentially conceding that judges lack a property interest in continued judicial employment. *See* Pls.' Opp'n Br. (Doc. 32) at 3 n.2 (citing *Driscoll*, 69 A.3d at 213 ("[J]udges have no property interest conferred by their election or retention in serving as commissioned jurists past the date set by the Constitution for their retirement.")). In the Amended Complaint, however, they centrally assert that, by operating to require retirement without cause and before the end of an elected term, Section 16(b) deprives Pennsylvania judges of their property interests in their judicial positions without due process of law.

We agree with Defendants that a Pennsylvania judge's property interest in his or her employment is expressly limited by the condition, embedded in the state Constitution, the he or she be retired upon reaching 70, precluding any claim based on procedural due process.

## IV. CONCLUSION

There is at least a superficial irony in having a judge who is appointed for life under Article III of the United States Constitution rule against his judicial colleagues on the courts of this Commonwealth who must hang up their robes at age 70. And we confess that this causes us no small amount of discomfort. But at the end of the day, it is for the citizens of the Commonwealth and their elected

representatives to amend and alter the subject provision, not this Court.  Indeed, since the filing of this matter, the Pennsylvania House of Representatives has passed a joint resolution that would amend Article V, Section 16(b) to reflect a retirement age of 75 for state jurists, *see* PA. H.B. 79 (2013), which bill is currently under consideration in the Senate Judiciary Committee.  While we may personally doubt the continued efficacy of the current mandatory retirement age and see the joint resolution as a salutary revision of the law, for all of the foregoing reasons we cannot base our decision on this fact.  Perhaps better than anyone else, the Plaintiffs before us recognize the legal principle of *stare decisis*, which directs us in the matter *sub judice* to but one result.

Accordingly, and for the reasons herein expressed, we will grant Defendants' Motion to Dismiss in its entirety.  An appropriate order shall issue.